RUFUS BERRY, *Complainant, versus* GEORGE BILLINGS *et als.*

The word *premises* in a deed of conveyance means everything which precedes the *habendum*, and if the *premises* are descriptive merely, and no particular estate be mentioned, the *habendum* becomes efficient to declare the intention.

A deed of land " to have and to hold " to B. and his heirs, is good, although the grantee is not named in the *premises;* and when the *habendum* is not repugnant to the *premises* it is good and effectual.

REPORTED by RICE, J.

This is a COMPLAINT FOR FLOWAGE. The respondents plead the right to flow.

To maintain the issue on his part the plaintiff put in the following deeds: Joseph Hazeltine and als., to himself, dated April 25th, 1815 ; Nathaniel Fellows, to same, 20th February, 1818 ; Charles T. Hazeltine and als., to same, 24th April, 1819 ; Moses Fellows, to same, 13th April, 1822 ; A. Dexter, to same, 27th April, 1836.

Berry *v.* Billings.

*David Garland,* the surveyor, testified that he run the lines and measured the land described in the deeds, and delineated the same upon the plan.

The plaintiff also introduced evidence tending to show that his lands were overflowed and damaged by the respondents' mill-dam, and to what extent.

The respondents, in defence, set up the right to flow the complainant's land above described.

To prove this, they put in a deed from the complainant to John Chandler, dated September 29th, A. D. 1821, and from him, through several mesne conveyances, to the defendants.

They then introduced evidence tending to show that they had flowed the complainant's land only so far as they were authorized to do by the aforesaid deeds.

At this point the case was withdrawn from the jury in order to obtain a judicial construction of the deeds aforesaid, and settle the legal rights of the parties under them, and whether they have the right to flow the lands of the complainant, or any portion thereof, and what portion, and to what extent.

*J. M. Meserve,* counsel for the complainant.

The complainant's title to land described, and fact of flowing, are not controverted.

The respondents set up the right to flow:

1. That the right was conveyed to John Chandler by the complainant.

2. That John Chandler conveyed that right to I. Dexter and als., and that they derive it from them through sundry mesne conveyances.

3. That Chandler, having that right as appurtenant to his mill, conveyed the mill to Isaac Dexter and als., " with all the privileges and appurtenances," and that this right passed with the mill as incident and belonging to it.

The complainant contends that the right to flow was only for the life of Chandler.   That it was not an inheritable estate—that it extended only to a portion of the premises—

and that it was not conveyed to the respondents in the deeds relied upon.

1. The right conveyed to Chandler by the complainant, by his deed of 29th of September, 1821, was limited to the land then owned by complainant, namely: that described in the deed from Hazeltine and als., in 1815—being eighty acres less the widow's dower, which was thirty acres.

II. The right to flow, supposed to have been acquired by that deed, does not apply to a large portion of the flowed lands:

1. Because the Chandler deed has specific reference to the eighty acres embraced in Hazeltine's deed.

2. Because a portion of the lands were purchased by the complainant long after the deed to Chandler:

    1. In 1822, of Moses Fellows; and

    2. In 1836, of A. Dexter.

3. Because, by no legal construction, can the Chandler deed be made to apply to land afterwards purchased by the complainant, as it contains no covenants for title—none of seizin—none of right to convey—none against incumbrances —none for quiet enjoyment—none for warranty. 9 Mass. R., 514; Rawle on Covenants for Title, 341; 29 Maine R., 183; 33 Maine R., 483; 14 Johnson R., 193.

III. The respondents have not the right to flow, which was deeded to Chandler by the complainant in 1821.

(I.) That right was not an inheritable, or assignable, right. Coke's Littleton, s. 524; Rawle on Cov., 382.

1. There are no words in the *premises* of the deed to pass an estate to him or assigns. 4 Kent's Com., 519; Shepherd's Touch., 88; *Corbin* v. *Healy,* 20 Pick. R., 514; *Sumner* v. *Williams,* 8 Mass. R., 162. The words "heirs and assigns," in the *habendum,* do not enlarge the estate declared in the *premises.* Coke on Littleton, 384; Rawle on Covenants for Title, 468; 19 Vermont R., 272; 20 Pick. R., 516; 13 N. H. R., 517.

2. If the right was assignable, it has never been transferred or assigned to the respondents:

1. There is no deed of this right from Chandler to any party, executed, acknowledged or recorded.

2. In the writing of 10th of November, 1837, on the back of Chandler's deed, Chandler does not *assume* or *assert* the right to convey.

The same remark is true in regard to the writing of 24th of September, 1838, on same deed, signed by Freeman Dexter and als., to Stockin and als.

All attemps at conveying this right to flow, end with the last named writing. There is no conveyance of this right, *eo nomine*, or by specific provision, from Stockin and als.

IV. The respondents do not acquire this right to flow under the general words, " all the privileges and appurtenances thereto belonging." 17 Mass. R., 443; 10 Maine R., 224.

1. By no possibility could the right, under those general words, extend to any lands not acquired by complainant at the time Chandler deeded to Dexter.

2. Chandler's deed to Dexter and als., of April, 1832, does not convey the right in terms, and the estate granted, as described, is not of such a character as that the right passes as an incident.

The description is a *"piece or parcel of land,"* with the privileges and appurtenances.

The attempt to convey this right in 1837, negatives a question of intent to pass the right under the general words, " privileges and appurtenances."

3. If the right passed from Chandler to Dexter and als., by deed of 1832, the respondents do not connect themselves with the covenant by " the said mesne conveyances " relied upon.

There are no words or terms used in the deed from Nathaniel Dexter to Stockin and als., in 1837, which pass the right to flow as appurtenant to the thing conveyed.

*R. H. Vose,* counsel for the respondents.

This is a complaint for flowage upon lot No. 152, in Win-

throp. Two points are presented for the consideration of the court.

*First.* What right to flow—to what extent—did the complainant, Berry, convey by his deed of September 29, A. D. 1821, to John Chandler? In other words, what is the true construction of that deed?

*Second.* Have the respondents succeeded to all the rights of said Chandler?

Under the first proposition, we maintain that the complainant himself granted to John Chandler, his heirs and assigns forever, the absolute right to flow eighty acres of land upon lot No. 152, (which it is admitted would include all the land flowed.)

Under the second proposition, we maintain that the respondents have succeeded, by several mesne conveyances, to all the rights of Chandler.

The deed of the complainant to Chandler is in these words: "full right and lawful authority to flow all the land on eighty acres of land, on lot numbered one hundred and fifty-two, in Winthrop aforesaid," then follows, "being all of eighty acres off of the full width of the east end of said lot, excepting thirty acres set off to the widow Elizabeth Hazeltine, as her thirds in the estate of Joseph Hazeltine." Whether the subsequent clause was intended to limit the first general description, "full right and lawful authority to flow all the land on eighty acres of land, on lot numbered one hundred and fifty-two, in Winthrop aforesaid," it is not now necessary to determine. Suppose it was, (which we deny,) still in the construction of this deed, we contend, the first general description must govern.

In *Worthington* v. *Kyler*, 4 Mass. R., 196, the words of description were, "all that my farm of land in said Washington, on which I now dwell, being lot No. 17, in the first division of lands there, &c." The farm demanded in the action was not included in lot No. 17, yet the court held that the whole farm passed, rejecting such reference as inconsistent and repugnant.

In *Keith* v. *Reynolds*, 3 Greenl. R., 393, the description was "a certain tract of land or farm, in Winslow," included in the tract which was granted to Ezra Potter. Afterwards there was a particular description by courses and distances, which did not include the whole farm. It was decided that the first general description must govern, and that the whole farm passed.

In *Lodge* v. *Lee*, 6 Cranch R., 237, the description was, "all that tract or upper island of land called Eden," and then was added a particular description, by courses and distances, which did not include the whole island. The court held that the whole island passed.

In *Jackson* v. *Barringer*, 15 Johns. R., 471, the grant was the farm on which I. I. D. now lives; the description then goes on to bound it on three sides, and adds, "and to contain eighty acres." The farm contained 149 acres, and the decision was, that the whole farm passed.

In *Swift* v. *Eyres*, Cro. Car., 546, the land conveyed was described as all the grantor's glebe lands lying in a certain town, viz.: seventy-eight acres of land, with all the profits, tithes, &c., and then was added, "all which was lately in the occupation of Margaret Peto." It was found that the tithes were never in the occupation of Margaret Peto, yet it was held that all the lands and the tithes first described passed.

In *Elliott* v. *Thatcher*, 2 Met. R., 44, note, the description was, all my real property, or homestead, so called, lying or being in Dartmouth, together with about thirty acres of land, more or less; for more particular description reference may be had to a deed given by Clark Richetson to David Thatcher, of the above mentioned premises. It appeared that the grantor was only seized of a part of the land which he bought of Richetson, yet the court decided that the whole passed.

In the case of *Crowley* v. *Bradbury*, 20 Maine R., 61, a conveyance of a certain saw-mill, machinery, &c., "meaning to convey all the premises which the grantor purchased of C. D., by deed dated, with all the privileges and subject to

all the restrictions therein expressed, reference thereto being had for a more particular description of the premises," will pass the mill and the whole land under the same, notwithstanding the grantor acquired by the deed to which reference was had, but a *part* of the premises upon which the mill was erected. In the case of *Melvin* v. *Proprietory of the Locks and Canals on Merrimac River*, 5 Met. R., 30, this same doctrine is fully established. These cases are cited by the court; also two cases from the New Hampshire Reports and one from East's Reports, in which a contrary doctrine was held, and yet the court came to the conclusion, to use their own language, that "the weight of authority, however, is, we think, clearly in favor of the *former* decisions."

In the case of *Wain* v. *Cabot*, 18 Pick. R., 553, a grantor conveyed all his farm in S., bounded, &c., also six acres of woodland, described by bounds, "being the same farm whereof M. died seized, and which the heirs of M. conveyed to me by two deeds recorded, &c.," it was held that the woodland passed to the grantee, although it was never owned by M., nor conveyed by his heirs to such grantee. See also *Drinkwater* v. *Sawyer*, 7 Greenl. R., 366, where the same principle is settled; also the case of *Dana* v. *Middlesex Bank*, 10 Met. R., 250, where the description was by metes and bounds extending to a certain street, which was intended to be limited by the words, *being the same that was set off to W.*—the land set off to W. did not extend to the street—held that the first description must prevail.

In the case now before the court, the language of the deed is: "*full* right and *lawful* authority to flow *all* the land on eighty acres of land, on lot numbered one hundred and fifty-two, in Winthrop aforesaid." Is not this description sufficiently clear and certain? Upon the principle of the cases already cited, is not the full right and lawful authority to flow all the land on eighty acres of land on lot No. 152, clearly conveyed by the complainant, Berry, to John Chandler, by his deed of September 29, A. D. 1821.

HATHAWAY, J.   The respondents allege that they have the
right to maintain their dam, and flow the complainant's land,
without compensation for damages.   They derive their title,
by mesne conveyances, from John Chandler, through Isaac
Dexter and others, to whom Chandler conveyed, by deed of
April 23, A. D. 1832.

While Chandler owned the mills, and the complainant
owned a part of lot No. 152, Chandler maintained a mill-dam
where the respondents now maintain one, and overflowed
the complainant's land, and settled with him September 29th,
1821, and paid him "full satisfaction for all past flowage on
said land, by said John Chandler's mill-dam," as expressed in
the complainant's deed of that date, by which he sold "and
conveyed to the said John Chandler full right and lawful au-
thority to flow all the land on eighty acres of land, on lot
numbered one hundred and fifty-two, in Winthrop aforesaid,
being all of eighty acres, off of the east end of said lot, ex-
cepting thirty acres set off to the widow Elizabeth Hazeltine,
as her thirds in the estate of Joseph Hazeltine.   To have and
to hold the same, with full right to flow, to him, the said
John Chandler, his heirs and assigns, forever, *provided* that
he, the said Chandler, shall not flow higher than his present
mill-dam will now flow."   By this deed Chandler acquired a
right to flow the complainant's land.

The complainant insists, in argument, that as there were
no words of inheritance in the *premises* of his deed to Chand-
ler, the words, "heirs and assigns," in the *habendum,* are
void and of no effect, and that Chandler took only the right
to flow during his life.   The technical meaning of the word
*premises,* in a deed of conveyance, is everything which pre-
cedes the *habendum.*   The office of the *habendum* is to name
the grantee, and to limit the certainty of the estate.   If the
premises in a deed are merely descriptive, and no particular
estate be mentioned, then the *habendum* becomes efficient to
declare the intention.

By legal construction, a deed of land *to have and to hold,*
to B. and his heirs, is good, although the grantee is not

named in the premises.  Inst., 6 and 7, 298, 299 ; Hargrave's note, 33 ; *Sumner* v. *Williams*, 8 Mass. R., 174 ; 4 Kent's Com., 468.

In the complainant's deed to Chandler the *habendum* is not repugnant to the premises, and it is therefore good and effectual.  Vin. Abr., tit. Grant K., s. 1.   Hence, when Chandler conveyed his mills, &c., to Isaac Dexter and others, by his deed of April 23, 1832, he owned the right to flow the complainant's land, by virtue of his deed to him, and to his heirs and assigns forever, subject only to the *proviso* in the deed concerning the height of the flowing, and that right passed by Chandler's deed to Dexter and others, as appurtenant to the mills, and thence, by mesne conveyances, to the respondents.  The case is not different, in principle, from that of the owner of a mill and dam, and certain lands overflowed by the dam, who sells the mill with all its privileges and appurtenances.   In which case the purchaser may continue the dam, with the same head of water, without payment of damages to the owner of the land flowed.   4 Kent's Com., 467 ; *Hathorn* v. *Stinson*, 1 Fairf. R., 224.   Nor does it make any difference that the deed from Nathaniel Dexter does not contain the words privileges and appurtenances ; those words were not necessary.   2 Greenl. Cruise, 334, note ; *Kent* v. *Waite*, 10 Pick. R., 141 ; *Blake* v. *Clark*, 6 Greenl., R. 436 ; *Brown* v. *Thissell*, 6 Cush. R., 257, cited by counsel in argument.

On the 29th of September, 1821, when the complainant conveyed to Chandler the right to flow his land, he owned no part of the lot No. 152, except the eighty acres which had been conveyed to him April 25, 1815, by Joseph Hazeltine and others, by this description, to wit.: " Beginning at the north-east corner of lot numbered 152, thence a west north-west course between said lots No. 152 and lot No. 153, one half mile and ten rods, thence southerly seventy-six rods, thence keeping the said width of seventy-six rods back to the east end of said lot, thence northerly to the first mentioned bounds, it being eighty acres more or less.   That

Berry *v.* Billings.

part of the said premises which is set off as the widow's dower is hereby reserved in this deed."

The complainant did not acquire title to the residue of lot No. 152, until by deed from Amasa Dexter, of April 27, 1836; the eighty acres conveyed to him by Hazeltine and others were conveyed by metes and boundaries; and their location is certain and unquestioned. His deed to Chandler conveyed the right to flow all of eighty acres off of the full width of the *east end* of said lot, excepting thirty acres set off to the widow Elizabeth Hazeltine as her thirds.

The ambiguity, if there be any, in the description of the land in the complainant's deed to Chandler, arises from the improper use therein of the words, "*east end of said lot.*" There is no east end of the lot. The course of the line which is marked on the plan as its *east line*, is south, southwest, and that of the line marked as the north line is west, north-west. There is no reasonable doubt that the description in the deed from Hazeltine and others, to the complainant, and in that from him to Chandler, were of the same lot. In both deeds the description is of eighty acres, excepting the widow's dower—a part of lot No. 152, three of the exterior boundary lines of which are also boundary lines of the lot described, and the complainant had a deed covering eighty acres, and no more, and his deed was recorded.

We do not consider the question, whether or not Berry's deed to Chandler would estop him from claiming damages for flowing that part of lot No. 152 to which he has subsequently acquired title, because we are satisfied that he did not convey, or attempt to convey, any interest in the land which he did not then own.

The respondents have the right to flow the eighty acres of land, more or less, except the widow's dower, which was conveyed to the complainant by Joseph Hazelton and others, by deed of April 25, 1815, subject to the proviso in the deed of Berry to Chandler, concerning the height of the dam and flowing; and they have no right to flow any other part of said lot No. 152, except according to the statutory proceed-

ings, and as agreed by the parties, the respondents must be defaulted, and commissioners appointed to assess the damages.

MAY, J., having been counsel in this case, did not sit at the hearing.