GEORGE L. HOOPER vs. ELLA S. LEAVITT.

York.   Opinion March 21, 1912.

*Life Estates.   Vendor and Purchaser.   Deeds.   Notice.   Record.   Priorities.
Unrecorded Deeds.   Adverse Possession.   Evidence.   Statute,.
1903, chapter 220.   Revised Statutes, chapter 75, sections
1, 8, 11; chapter 107, section 3, clause III.*

A life tenant's warranty deed in fee conveys a life estate only.

The title acquired under a recorded conveyance of specific real estate is valid against a prior unrecorded conveyance of the same property by the same grantor, unless it be shown that the grantee in the recorded conveyance, when he took it, had actual notice of the previous conveyance.

The doctrine which prevailed in Maine prior to chapter 220, Laws of 1903, that a conveyance of all the grantor's interest in the land described in his deed conveyed only the interest he actually had at the time of the conveyance, so that such a conveyance, although recorded, would not be effectual against a prior unrecorded conveyance of the same land, was never applicable to conveyances, although of quitclaim without covenants, in which the property was specifically described as conveyed.

In an action to recover land from the grantee under a recorded conveyance, the burden is on the plaintiff to show that such grantee took with actual notice of the existence of the plaintiff's prior unrecorded deed.

In an action to recover land, evidence *held* insufficient to show that when the defendant took under a recorded conveyance he had actual notice of the plaintiff's prior unrecorded deed.

A life tenant's warranty deed in fee and a grantee's taking of actual possession thereunder, do not work a disseizin of the remaindermen, since their right of entry does not accrue until termination of the life estate by its own limitation.

Under Revised Statutes, chapter 75, section 1, one owning land and having a right of entry into it, whether seized of it or not, can convey all his interest in it.

Possession and occupation of land by the grantees of a life tenant, under a warranty deed in fee, does not become adverse to the remaindermen until the life tenant's death, since until that time the possession and occupation is rightful.

In an action to recover land, evidence *held* insufficient to show adverse possession by the plaintiff.

On report. Judgment for defendant.

Real action wherein the plaintiff demanded an island in the town of Kennebunkport. Plea, the general issue, with a brief statement claiming title and possession. At the conclusion of the evidence the case was reported to the Law Court to render "such judgment as the law and the evidence require."

The case is stated in the opinion.

*Cleaves, Waterhouse & Emery,* for plaintiff.

*Allen & Willard, and Foster & Foster,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

KING, J. Real action, reported to the Law Court. The land demanded is a small island known as Cape Island, situated at Cape Porpoise in the town of Kennebunkport. The defendant pleaded the general issue with a brief statement of title in herself. The real issue, then, is which party shows the better title.

This island was owned by John Bickford at the time of his death in 1836. By his will it passed to his wife, Susan Bickford, for her life, and after her death to his two children, John W. and Lucy E. in fee simple.

April 26, 1847, Susan Bickford, the life tenant, gave to Clement Huff a warrantee deed recorded July 3, 1847, purporting to convey the island in fee. It is admitted that Susan Bickford died May 16, 1867.

The plaintiff claims his record title to the island from Huff and through the following conveyances: Warrantee deed from Clement Huff to Payson T. Huff and Henry F. Huff, dated June 25, 1880, recorded March 2, 1883; warrantee deed from Payson T. Huff to Anna S. Huff and Bertie W. Huff, dated Feb. 22, 1883, recorded March 2, 1883; and warrantee deed from Anna S. Huff, Bertie W. Huff and Henry F. Huff to George L. Hooper (the plaintiff) dated Aug. 25, 1890, recorded Sept. 11, 1890.

On the other hand the defendant claims her record title to the island through mesne conveyances from John W. Bickford and Lucy E. (Bickford) Goodwin, the remaindermen, as follows: Quitclaim deed from John W. Bickford to Justin M. Leavitt dated Nov. 27, 1897, recorded same day; quitclaim deed from Lucy E.

Goodwin to Justin M. Leavitt dated Dec. 1, 1897, recorded same day; and warrantee deed from Justin M. Leavitt to Ella S. Leavitt dated Nov. 20, 1902, recorded the same day. The defendant also introduced a deed from the State of Maine to Justin M. Leavitt, dated Oct. 5, 1897, recorded Oct. 7, 1897, in which deed "Cape" island with other islands is described as conveyed. In all of the conveyances in each chain of title the island in question is clearly described as the property conveyed and not merely the grantors' "right, title and interest therein."

The first question then is: which of these record titles is the better? Obviously the answer must be in favor of the defendant's title, for that is complete and securely established in the recorded conveyances from the remaindermen, who had the full title of record after the termination of the life estate in 1867.

On the other hand the plaintiff's title of record is fatally defective. By the deed from Susan Bickford to Clement Huff no greater estate was, or could have been, conveyed than the grantor then had, which was an estate for her life. *Moulton* v. *Edgecomb,* 52 Maine, 31, 32, and R. S., chapter 75 section 8. Accordingly Clement Huff acquired under that deed only a life estate which terminated at the death of Susan Bickford, May 16, 1867.

But the plaintiff introduced an instrument, of which the following is a copy, written on the back of the deed from Susan Bickford to Clement Huff, but which was not recorded, however, till March 22, 1898.

"We John Bickford and Lucy Goodwin, wife of Francis W. Goodwin, all of Kennebunkport & County of York, do hereby relinquish all our right and title to the within described Island & do confirm the doings of the within named Susan Bickford in the sale of the same.

"In testimony whereof we have hereunto set our hands & seals this twenty-fourth day of April in the year eighteen hundred & forty nine.

"Signed, sealed & delivered
    in presence of us
     Payson T. Huff.

                John W. Bickford   (seal)
                Lucy E. Goodwin   (seal)
                Francis W. Goodwin  (seal)."

That instrument was admitted subject to objection. Against its validity and admissibility it has been suggested, that no grantee is named in it, that John W. Bickford was a minor at the time he signed it, and that it is an unacknowledged instrument and therefore was not entitled to record as a deed. But we do not regard it important to specially consider those suggestions, since we are of opinion that that instrument, not having been recorded at the time of the deeds to Justin M. Leavitt under which the defendant claims, even though it should be regarded as sufficient in form and substance to constitute a valid deed, and even if it had been acknowledged, could have no legal effect as against the defendant's record title, unless it be shown that Mr. Leavitt, at the time he took his deeds, had actual notice that the prior instrument had been given. The law is too well settled in this State to admit of doubt that the title acquired under a recorded conveyance of specific real estate is valid against an unrecorded previous conveyance of the same property by the same grantor, unless it be shown that the grantee in the recorded conveyance, when he took it, had actual notice of the previous conveyance. Our statute expressly provides: "No conveyance of an estate in fee simple, fee tail or for life, or lease for more than seven years, is effectual against any person, except the grantor, his heirs and devisees, and persons having actual notice thereof, unless the deed is recorded as herein provided." R. S., chapter 75, section 11.

It is suggested in behalf of the plaintiff, that because the recorded deeds from the remaindermen to Mr. Leavitt given in 1897 were quitclaim deeds, they were not effectual against the prior unrecorded instrument in question. But the answer is, that the deeds to Leavitt, though quitclaim and without covenants, were not conveyances of the grantors' right, title or interest in the demanded premises, but purported to convey an actual title to the specific property—describing the island definitely as the property conveyed.

Prior to 1903 it had been held by this court (*Coe* v. *Persons Unknown*, 43 Maine, 432, *Walker* v. *Lincoln*, 45 Maine, 67, and other cases) that a conveyance of all the right, title and interest which the grantor has in and to the land described in his deed, conveys only the right, title and interest which he actually has at the time of the conveyance, and consequently that such a conveyance although recorded would not be effectual against a prior unrecorded

conveyance of the same land. The reason given for holding that doctrine was, that when a grantee takes a conveyance by so indefinite description as "the right, title and interest," which the grantor has, he must take the risk of the grantor's right, title and interest. *Coe* v. *Persons Unknown, supra.* But this doctrine was never held applicable to conveyances, although of quitclaim without covenants, in which the property was specifically described as conveyed, and not containing the limiting words, "all right, title and interest," etc. In 1903 the legislature enacted that, "Conveyances of the right, title or interest of the grantor, if duly recorded, shall be as effectual against prior unrecorded conveyances, as if they purported to convey an actual title." Laws, 1903, c. 220. The conveyances to Mr. Leavitt from the remaindermen, although given prior to the Act of 1903, were not conveyances of the right, title or interest of the grantors, but purported to convey an actual title to the island in question, and in the opinion of the court they are to be held effectual against the prior unrecorded instrument in question, unless Mr. Leavitt had actual notice thereof.

The burden of proving the fact of actual notice was on the plaintiff. Unquestionably that fact, like any other fact to be proved, may be established by direct evidence, or it may be inferred as a legitimate conclusion from indirect evidence—by circumstantial evidence. But in considering whether or not the evidence of such fact, relied upon in any given case, is sufficient, it must be borne in mind that *actual notice* is the requirement of the statute, and it is that fact that must be proved, whether the evidence be direct or circumstantial.

An examination of the record in this case fails to disclose any substantial evidence offered by the plaintiff reasonably tending to establish such fact. But he relies upon certain facts and circumstances, testified to by Mr. Leavitt, as circumstantial evidence tending to prove such actual notice. Those facts and circumstances are: that Mr. Leavitt, being at the time register of deeds for York County where the conveyances of Cape Island were recorded, examined the records and thereby acquired actual knowledge of the various warrantee conveyances under which the plaintiff claimed title to the island; that he knew, or ought to have known, that John W. Bickford and Lucy E. Goodwin were not in the actual possession of the island; that he procured his deeds from them, not

directly, but through an agent; and that he made no inquiries, directly or through his agent, as to whether or not the remaindermen had made any previous conveyance of the property.

But from those facts and circumstances we do not think it can be inferred as a legitimate conclusion that Mr. Leavitt had or is chargeable with actual notice that the instrument in question had been given.  On the other hand he testified, that at the time he took his deeds he had no notice or knowledge either actual or otherwise of the existence of the instrument in question, and that the first knowledge he had of it was "the next year afterwards" when it came to the registry for record.  Considering all the evidence bearing on this branch of the case, it is the opinion of the court that there is not sufficient proof that Mr. Leavitt at the time he took his deeds had actual notice of the instrument in question.

The plaintiff further seems to suggest, as we understand his brief, that the remaindermen were disseized by reason of the giving of the warrantee deed in fee of the island from Susan Bickford to Clement Huff under which he took actual possession, and that being disseized they could convey nothing to Leavitt by their deeds unless it appeared that they had made an entry upon the property and were in the actual possession of it at the time those deeds were given.  The answer to that suggestion is twofold: first, that a conveyance by a tenant for life of a greater estate than he can lawfully convey will not work a forfeiture, and no expectant estate can be defeated by any act of the owner of the precedent estate or by any destruction of it (R. S., c. 75, sec. 8) ; and second, that "a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it or all his interest in it, by a deed to be acknowledged and recorded as hereinafter provided."  R. S., c. 75, sec. 1.

Accordingly the deeds from the remaindermen to Leavitt were effectual to convey any and all interest they then had in the demanded premises, whether they were then seized of the premises or not.  And this brings us, finally, to a consideration of the question whether John W. Bickford and Lucy E. Goodwin, at the time of their respective conveyances to Leavitt in 1897, had lost all their title to the island by adverse possession.

In discussing this branch of the case it should be said at the outset that the learned counsel for the plaintiff in his oral argument

stated that the plaintiff did not rely upon a title to the demanded premises acquired by disseizin. But inasmuch as we find in the brief for the plaintiff some assertion of a title seemingly based upon the doctrine of adverse possession, we deem it proper here to consider that question.

It has already been noted that the life tenant, Susan Bickford, died May 16, 1867. Accordingly such possession and occupation of the demanded premises as Clement Huff had prior to May 16, 1867, was not adverse to the remaindermen, because they had no right of entry until the termination of the life estate by its own limitation. Our statute of limitations of real actions (and the statute in force in 1847 was to the same effect) expressly provides that the right of entry of a remainderman first accrues "when the intermediate estate would expire by its own limitation, notwithstanding any forfeiture thereof for which he might enter at an earlier time," R. S., c. 107, sec. 3, cl. III. This question of adverse possession, thereof, is to be determined by the extent and character of the use and occupation of the demanded premises by the plaintiff and those under whom he claims since May 16, 1867.

The demanded premises is a small rocky, almost barren island, containing about seven acres, connected with another island by a half-tide bar. No one ever lived on it, and no buildings were ever built upon it. Its soil is untillable and no material effort was ever made by any one to cultivate any part of it. Clement Huff, the grantee of the life tenant, gave a deed of the island to his sons Payson T. Huff and Henry F. Huff in 1880, thirteen years after the death of the life tenant. Those grantees were called as witnesses for the plaintiff. They testified that their father built a wall of stones around the shore of the island where needed to keep sheep from coming on, which wall was washed down by the sea after two years; that he cut hay on the island two years, and permitted a yoke of oxen to be pastured thereon for one year. But those acts of occupation by Clement Huff were done soon after the deed from Susan Bickford to him was given, many years before her death, and while he was rightfully in possession of the island under his deed from her as the life tenant. The evidence of those acts therefore has no bearing on the question whether the remaindermen were disseized after the life estate terminated in 1867 by its own limitation, except so far as it indicates the physical char-

acter and condition of the island. Neither of the sons of Clement Huff testified to any overt act of occupation of the island by their father during the period of thirteen years from the death of the life tenant to the time of the conveyance to them in 1880. On the other hand they testified in cross-examination that they did not know of any thing which their father did on the island after the death of the life tenant. And there is no testimony in the record from any witness tending to show any acts of occupation of the island by Clement Huff, or by any one under authority of him, during that period.

It does appear, however, that Payson T. Huff and Henry F. Huff, after the deed from Clement Huff to them in 1880, built a wire fence across the bar, about midway between the two islands, to keep sheep from passing from the other island to Cape Island, that they cut some hay on it twice, and let a third party pasture some sheep there one season. But it is evident that they did not regard those acts of much consequence, for Henry F. Huff, in answer to a question as to what they did on the island said: "We never did much of anything. We were on a number of times but never got any benefit from the island then."

The plaintiff, a resident of Massachusetts, was a summer visitor at Cape Porpoise for many years, with more or less regularity, and after he took his deed of the island in 1890 he visited it frequently as a place of resort. At one time he set out a few small trees there, but they did not live. Asked as to what other acts he did on the island he said: "Really nothing except to visit the island, pick berries and fish from the rocks. Q. How many people have you seen doing the same thing when you were there? A. Hundreds of them."

In *Roberts* v. *Richards,* 84 Maine, 1, 10, it was said, that the essential use and occupation to establish adverse possession, unless expressly brought home to the knowledge of the owner, "must be of such unequivocal character as will reasonably indicate to him visiting the premises during the statute period, that instead of their suggesting the probable invasion of a mere occasional trespasser, they unmistakably show an asserted exclusive appropriation and ownership." The court there also quoted from *Worcester* v. *Lord,* 56 Maine, 265, 269, that "There must be overt acts which leave no room to inquire about intention and which amount to actual ouster."

Applying these principles to the case at bar it will not be difficult we think to reach a correct decision.

It has been noted that there is no evidence of any acts of occupation of the island by Clement Huff during the first thirteen years after the termination of the life estate, from 1867 to 1880, and the remaindermen conveyed to Leavitt within twenty years after 1880. But the acts of occupation shown to have occurred after 1880 were not of such unequivocal character as to reasonably indicate to the remaindermen visiting the property an asserted exclusive appropriation and ownership of it. The existence of the wire fence built across the bar in tide water, midway between the islands, might as reasonably suggest that it had been built by the occupier of the other island to keep the sheep thereon from crossing the bar, as that it was built by some one claiming ownership of Cape Island. The other acts were few and really suggestive of nothing more than that freedom of use which is habitually made of the small islands along our coast by fishermen and pleasure seekers. Indeed, Henry F. Huff, the plaintiff's witness, testified that others used Cape Island "Just when they had a mind to—free for any one to go on." As was said in *Roberts* v. *Richards,* supra, this court has already declared "that much more significant acts on wild and uncultivated land are not sufficient to disseize the real owner."

It is therefore the opinion of the court that there is not sufficient evidence of acts of occupation of the demanded premises by the plaintiff and those under whom he claims, to establish a title by disseizin, or adverse possession, good against John W. Bickford and Lucy E. Goodwin at the time of their conveyances to Justin M. Leavitt in 1897, or that has since ripened into a title against the defendant.

*Judgment for the defendant.*