2003 ME 97

**Thomas J. WENTWORTH et al.**

**v.**

**Earleen SEBRA.**

Supreme Judicial Court of Maine.

Argued: May 13, 2003.

Decided: July 31, 2003.

Stephen P. Beale, (orally), Skelton, Taintor & Abbott, Auburn, for the plaintiff.

Richard Golden, (orally), Clifford & Golden, P.A., Lisbon Falls, for the defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Thomas J. Wentworth, Bobbie J. Wentworth, and Earle C. Hildreth, Jr. (Wentworth)[1] appeal from the summary judgment entered in the Superior Court (Androscoggin County, *Gorman, J.*) in favor of Earleen Sebra (Sebra) holding that a contested easement expired when the original grantee died. Wentworth contends that the Superior Court erred in: (1) applying the strict common law technical requirement that the word "heir" must be used to create a perpetual easement; (2) granting the summary judgment without first providing Wentworth the opportunity, through an evidentiary hearing, to establish the transferability of the easement by factual proof; (3) distinguishing between an easement affirmatively conveyed to the grantee and an easement retained by the grantor; (4) concluding that the use of the word "heirs" in the habendum does not enlarge the estate conveyed by the granting clause; and (5) failing to consider whether the easement may be "successively assigned." We disagree and affirm the judgment.

## BACKGROUND

[¶ 2] Wentworth owns a parcel of land near the Bowdoinham Road in Lisbon. The lot does not abut Bowdoinham Road. Sebra owns a parcel of land that lies between the Bowdoinham Road and Wentworth's parcel (Sebra's parcel is bordered by the Bowdoinham Road on the north and Wentworth's property on the south).[2] Wentworth claims an easement over Sebra's land by virtue of a right-of-way granted by Fred K. Small to U.G. Harding dated September 14, 1917, and recorded in the Androscoggin County Registry of Deeds.

[¶ 3] The 1917 deed conveyed the land, now owned by Wentworth, to Harding's "heirs and assigns," and also contained the following language specifically conveying an easement:

Said U.G. Harding and assigns to have right of way across land belonging to the grantor lying Northerly of said Potter brook [sic] to the Main road [sic].

[¶ 4] Notably, the easement clause did not contain the word "heirs." The deed also contained no description of the location, width, scope, or other details of the easement. Harding died prior to November 12, 1974. Subsequent deeds in Wentworth's chain of title describe and attempt to transfer the claimed easement.

[¶ 5] After a dispute arose concerning Wentworth's right to access his property by crossing Sebra's, Wentworth filed a two-count complaint against Sebra. In Count I, Wentworth sought a declaration from the court: (1) that he and his successors in title have an easement to their parcel from Bowdoinham Road over Sebra's parcel; (2) locating the easement on the face of the earth, its width, and the scope of its use; and (3) describing any and all other rights, easements, privileges, and appurtenances relating to the easement burdening Sebra's parcel or benefiting Wentworth's. In Count II, Wentworth

---

1. Together, Thomas and Bobbie Wentworth own the parcel of land adjacent to Earleen Sebra's land. Earle Hildreth is the Wentworths' immediate predecessor in interest. Henceforth, the plaintiffs will be referred to simply as Wentworth.

2. In his brief, Wentworth describes his parcel as landlocked. The Superior Court accepted this description. Nowhere does Sebra dispute it. The statements of material fact, however, do not assert that the parcel is or is not landlocked, only that it does not abut Bowdoinham Road.

sought injunctive relief to prevent Sebra from interfering with his use of the easement.

[¶ 6] Sebra's answer denied that an easement over her property existed. She also counterclaimed asserting that Wentworth had no easement because the deed that originally created the right-of-way did not contain words of inheritance. Pursuant to 33 M.R.S.A. § 772(2) (Supp.2002),[3] she sought to "recover" the easement and vest herself with unencumbered title.

[¶ 7] Following discovery, Sebra moved for a summary judgment and Wentworth filed a cross motion for a partial summary judgment.

[¶ 8] Because the 1917 deed was drafted prior to the Maine Short Forms Deeds Act of 1967,[4] the Superior Court applied the "unyielding" common law rule that the technical word "heirs" must be used to create a perpetual interest.[5] Noting that in other places in the deed, the parties used the phrase "heirs and assigns," the court determined that the omission of

"heirs" from the easement clause was conscious and could only suggest that the easement was not intended to be permanent. Furthermore, the court rejected Wentworth's reliance on *O'Donovan v. McIntosh,* 1999 ME 71, 728 A.2d 681, explaining that *O'Donovan* held only that an easement in gross could be assignable if that had been the parties' intent. In contrast, the issue here was not whether the easement was assignable but whether it was perpetual. The court concluded that there were "no contested issues of material fact concerning the duration of the easement" and that the easement expired when U.G. Harding died. The court granted Sebra's motion for a summary judgment and denied Wentworth's cross motion. Wentworth moved for reconsideration, and the court also denied that motion. This appeal followed.

## DISCUSSION

### A. Standard of Review

[¶ 9] "We review the grant of a motion for summary judgment de novo,

---

3. Section 772(2) provides:

Preservation of Rights. A person claiming an interest in real estate by reason of the omission of technical words of inheritance or the lack of an habendum clause in a deed that conveyed or reserved a property interest before October 7, 1967 may preserve that claim by commencing a civil action for the recovery of that property in the Superior Court or the District Court in the county or division in which the property is located on or before December 31, 2002. 33 M.R.S.A. § 772(2) (Supp.2002). Sebra filed her counterclaim on November 9, 2001 and has preserved her claim that omission of technical words of inheritance in the 1917 deed created an easement limited to the life of Harding.

4. The Short Forms Deeds Act abolished the technical requirement that the term "heirs" must be used to create an interest of perpetual duration. 33 M.R.S.A. § 772 (1999). Effective September 18, 1999, section 772 applied retroactively. Section 772(1) provides:

Words of inheritance; habendum. In a conveyance or reservation of real estate, the terms "heirs," "successors," "assigns" "forever" or other technical words of inheritance, or an habendum clause, are not necessary to convey or reserve an estate in fee. A conveyance or reservation of real estate, whether made before or after the effective date of this section, must be construed to convey or reserve an estate in fee simple, unless a different intention clearly appears in the deed.

33 M.R.S.A. § 772(1) (Supp.2002).

5. Because in her counterclaim, Sebra has invoked the savings clause of 33 M.R.S.A. § 772(2) (Supp.2002), we apply the law in effect at the time the deed was drafted and need not consider the constitutionality of the retroactive application of 33 M.R.S.A. § 772(1) (Supp.2002) in the absence of such an invocation.

viewing the evidence in the light most favorable to the party against whom judgment has been granted, to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). We give the party opposing a summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. If the record reveals no genuine issue of material fact, then a summary judgment is proper. *Id.* ¶ 6, 784 A.2d at 21. When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 8, 788 A.2d 603, 606.

[¶ 10] Moreover, the interpretation of a deed is a question of law subject to de novo review. *ALC Dev. Corp. v. Walker*, 2002 ME 11, ¶ 10, 787 A.2d 770, 774. When interpreting a deed, a court first gives the words of the deed their "general and ordinary meaning to see if they create an ambiguity." *Id.* If no ambiguity exists, then those words alone determine the parties' intent. *Id.* However, if the terms are ambiguous, then the court looks to extrinsic evidence to determine the parties' intent. *Id.*

B. Required Use of the Term "Heirs"

[¶ 11] Wentworth contends that the Superior Court erred when it applied the "unyielding" common law rule that the term "heirs" must be used in a clause conveying an easement to create an interest of perpetual duration. He relies on our decisions in *Stickney v. City of Saco,*

2001 ME 69, 770 A.2d 592; *O'Neill v. Williams*, 527 A.2d 322 (Me.1987); and *O'Donovan*, 1999 ME 71, 728 A.2d 681, to support his argument that the court should have disregarded the technical failure of the easement clause and determined the parties' intent from the wording of the entire deed or from the surrounding facts.

[¶ 12] The law recognizes two different types of easements or rights of use over the property of another: easements appurtenant and easements in gross. *Stickney*, 2001 ME 69, ¶ 31, 770 A.2d at 605. Grantors create easements appurtenant to benefit a dominant estate and such easements run with the land. *Id.* To be appurtenant, the easement must be attached or related to a dominant estate. *Id.*

[¶ 13] In contrast, easements in gross are personal interests in land or the right to use another's land. *Id.* ¶ 32, 770 A.2d at 605. They are "not appurtenant to any estate in land" and do not belong "to any person by virtue of his ownership of an estate in other land." *Id.* (quoting *LeMay v. Anderson*, 397 A.2d 984, 987 n. 2 (Me.1979)). An easement in gross is generally not assignable and terminates upon the death of the grantee. *Id.* However, when evidence demonstrates that the parties clearly intended that an easement in gross be assignable, it is. *Id.* This policy is grounded in the general principle of property law favoring free alienability of property. *Id.*

[¶ 14] When construing deeds created prior to the enactment of the Short Forms Deeds Act, we look to the laws in effect at the time the deed was drafted.[6] *Id.* ¶ 39, 770 A.2d at 607. In 1917, the common law strictly required the use of the technical word "heirs" in a deed to an

---

**6.** *But see n.5, supra.*

individual to create an interest in land of perpetual duration. *Id.* ¶ 34, 770 A.2d at 605. Without the word "heirs," courts could only construe the interest created as a life interest in the grantee, regardless of how clearly the deed otherwise expressed an intent to create an interest of perpetual duration. *Id.*

[¶ 15] However, in *O'Neill*, we explained that we have long recognized that this technical requirement often frustrated the parties' intent; therefore, we have "routinely construed a provision in a deed purporting to reserve an easement for the benefit of land retained by the grantor as the creation of an easement appurtenant to that land ... obviat[ing] the requirement of the technical word 'heirs' to preserve an interest of perpetual duration." *O'Neill*, 527 A.2d at 324; *see e.g., Hall v. Hall*, 106 Me. 389, 392–93, 76 A. 705, 707 (1910).

[¶ 16] More recently, in *Stickney*, we considered a reserved right-of-way [7] and determined that even though the easement clause omitted the term "heirs," the easement was perpetual because the grantor's intent to make it perpetual could be presumed from the facts at play. *Stickney*, 2001 ME 69, ¶ 41, 770 A.2d at 607. We applied the longstanding rule that, in the context of a reservation of an easement for the benefit of land retained by the grantor, the failure to include the term "heirs" may be overlooked if the parties' intent is clearly discernible from the deed or the facts of the case. *Id.* ¶¶ 36–41, 770 A.2d at 606–07.

[¶ 17] Here, unlike the granting clauses in *O'Neill* and *Stickney*, the easement clause does not "reserve" an easement for the benefit of the grantor's land, rather it burdens the grantor's land for the benefit of the grantee's land. In this context, we cannot assume that the grantor intended to indefinitely burden his land and convey anything other than a life estate in the easement. In a case decided only eight years prior to the drafting of the Small–Harding deed, we explicitly stated that the phrase "assigns forever" created only a life interest and that the term "heirs" was essential to create an estate in fee. *Brown v. Dickey*, 106 Me. 97, 103, 75 A. 382, 385 (1909). We must assume the parties understood the meaning of the technical terms employed. Thus, we decline to extend the rule applied in *O'Neill* and *Stickney* to this case. The absence of the required term "heirs" in an easement clause that does not "reserve" an easement for the benefit of the grantor's retained estate creates an easement that is not perpetual. The Superior Court did not err in distinguishing between easements affirmatively conveyed and those retained or excepted by the grantor. Harding's easement terminated when he died, and Wentworth holds no easement across Sebra's property.

[¶ 18] Finally, as the Superior Court found, *O'Donovan* does not assist Wentworth. In *O'Donovan*, we were asked to decide whether an easement in gross created in a 1989 deed was assignable, not whether it was perpetual.[8] *O'Donovan*, 1999 ME 71, ¶¶ 1, 6, 728 A.2d at 682–83. We held that, although easements in gross

---

7. According to the 1915 deed, the grantor deeded a parcel of land *"reserving a right of way, ten feet wide ..." Stickney v. City of Saco,* 2001 ME 69, ¶ 28, 770 A.2d 592, 604.

8. In *O'Donovan*, the grantor conveyed a parcel by warranty deed, excepting and reserving an easement. *O'Donovan v. McIntosh*, 1999 ME 71, ¶ 3, 728 A.2d 681, 682. Specifically, the deed stated, "[e]xcepting and reserving for the benefit of the Grantor and his heirs and assigns, a right of way and easement ...." *Id.* The clause further expressed the intent to make the easement assignable, by describing additional limitations on assignees: "The assigns of the Grantor herein shall be limited ...." *Id.*

are not generally assignable because they are personal rights, when the parties clearly express an intent in the language of the deed to make an easement in gross assignable, it is assignable. *Id.* ¶ 12, 728 A.2d at 685. Here, the easement was not in gross, and more importantly, the question is not whether it was assignable. Moreover, *O'Donovan* represented a change in the law and applied to the construction of a 1989 deed. It does not change the common law in effect in 1917 and does not control our determination of what type of interest the 1917 deed created.

C. Hearing

[¶ 19] Wentworth asserts that the Superior Court erred by not granting a hearing to allow him to establish the parties' intent to make the easement perpetual through factual proof because *O'Neill* and *Stickney* permit a court to find that an easement in gross is perpetual based on the surrounding facts. Because we have concluded that the rule applied in *O'Neill* and *Stickney* does not apply to this case and that the use of the term "heirs" was required to create a perpetual easement, Wentworth cannot establish through factual proof that the parties intended to make the easement perpetual. In addition, Wentworth's complaint did not claim that he could establish the existence of the easement as a matter of fact on the basis of some other legal theory, e.g., an easement by necessity or by prescription. Therefore, the Court did not err in not holding a hearing.

D. Habendum[9]

[¶ 20] Because the term "heirs" appears in the habendum and in the larger paragraph that grants the parcel described, which contains the easement clause, Wentworth contends that the Superior Court erred in concluding that the absence of the term "heirs" from the easement clause can only create a life interest. He relies on the principle that a habendum may enlarge the estate conveyed by a granting clause and suggests that the presence of the term "heirs" in other parts of the deed demonstrates the parties' intent to make the easement perpetual.

[¶ 21] It is not clear that Wentworth has properly preserved this argument. If he has, however, the habendum clause can enlarge an estate conveyed only if it is not repugnant to the premises.[10] *See Emery v. Chase,* 5 Me. 232, 236 (1828) ("The *habendum* cannot defeat or destroy an estate granted in the premises; so far as the former is repugnant to the latter, it is inoperative and void."); *but see Higgins v. Wasgatt,* 34 Me. 305, 308–09 (1852) (holding that when there was "no doubt" the parties' intended to create a life estate, their intent prevailed, giving effect to the habendum and diminishing the estate despite the conflict between the habendum and the premises). If the premises contain no express limitation on the estate granted, then the premises are merely descriptive, the premises and the habendum are not repugnant, and the habendum can enlarge the estate. *See Berry v. Billings,* 44 Me. 416, 423–24 (1857). Here, the premises, in its easement clause, contain the word "assigns." Because the term "assigns" describes a particular estate, *see Brown,* 106 Me. 97, 103, 75 A. 382 (explaining that the phrase "to him and his assigns

---

9. Also termed "to-have-and-to-hold clause," in a deed, the habendum clause begins with the introductory words "to have and to hold" and defines "the extent of the interest being granted and any conditions affecting the grant." BLACK'S LAW DICTIONARY 716 (7th ed.1999).

10. The "premises" in a deed refers to everything that precedes the habendum. *Berry v. Billings,* 44 Me. 416, 423 (1857).

forever" creates only a life estate), the premises are not merely descriptive. The habendum and premises conflict, and the habendum cannot enlarge the estate.[11]

### E. Successive Assignment

 [¶ 22] Wentworth argues that, once the Superior Court concluded that the easement was not technically perpetual, the court should have, nevertheless, according to *O'Donovan*, asked whether it was "successively assignable." As discussed in reference to Wentworth's first argument, *O'Donovan* stands for the proposition that, although not generally assignable, an easement in gross is assignable if the parties clearly express that intent in the deed. *O'Donovan*, 1999 ME 71, ¶ 7, 728 A.2d at 683. *O'Donovan* does not necessarily establish that easements in gross are "successively assignable" or perpetual. *See id.* A life estate may be assignable, *Wilson v. Curtis*, 90 Me. 463, 466, 38 A. 365, 367 (1897), but a life tenant cannot convey an estate greater than he or she holds, *see Hooper v. Leavitt*, 109 Me. 70, 73–74, 82 A. 547, 549 (1912), so the fact that an easement is assignable does not establish that it is perpetual. Moreover, as stated previously, *O'Donovan* did not change the common law as it existed in 1917 and does not control our interpretation of the 1917 deed at issue here.

The entry is:

Judgment affirmed.

---

11. This is not a case like *Higgins v. Wasgatt*, 34 Me. 305, 308–09 (1852), where the parties' intent was not in doubt.