STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NOS. RE-04-019
RE-04-026

LARRY BELANGER,

        Plaintiff

v.

**ORDER**

LEONEL BELANGER,

        Defendant

This case comes before the Court on Larry A. Belanger's Motion for Summary Judgment and Leonel P. Belanger's Motion to Dismiss.

## FACTS

Larry Belanger (Larry) and Leonel Belanger (Leonel) are brothers engaged in a dispute over their respective interests in property located on Berry Road in Saco, Maine. Their parents, Albert and Alice Belanger, are deceased.

The property at issue, over 52 acres including a home, was conveyed by recorded deed to Albert, Alice, and Leonel Belanger on June 23, 1945, before Larry was born. The Grantor was Alice Belanger's father. The deed grants the property to "Alice Victorine Belanger, Albert N. Belanger and Leonel Belanger, their Heirs and Assigns forever." However, the habendum clause of the deed,[1] which appears later in the document, includes some preprinted language and some blank spaces. The habendum clause, as filled in, reads: "To have and to hold the aforegranted and bargained premises with all

---

[1]    A habendum clause in a deed "defines the extent of the interest being granted and any conditions affecting the grant." BLACK'S LAW DICTIONARY 716 (7th ed. 1999). It is also known as the "to-have-and-to-hold clause." *Id.* A granting clause consists of the "words that transfer an interest in a deed." *Id.* at 707.

privileges and appurtenances thereof to the said Alice Victorine Belanger and Albert N. Belanger to have during their natural life and upon the death of said Alice Victorine Belanger and Albert N. Belanger thereunto to the said Leonel Belanger, his heirs and assigns forever . . .." Larry Belanger was born in 1947.

In 1952, Albert Belanger died intestate. In 1965, Alice Belanger conveyed about half of the Berry Road property to Leonel by deed. That deed includes an easement to Alice that refers to the property as previously conveyed to Alice and "Albert N. Belanger (deceased) to hold for the term of their natural lives." When Alice Belanger died in 1996, she left any real property she might have to Larry, stating she was omitting a bequest to Leonel in her will "having previously deeded to him my interest in a portion of the property situated on the Berry Road in Saco, Maine." Her will was never probated.

After Alice's death, the brothers attempted to resolve their respective interests in the Berry Road property, agreeing at least twice to settlements. Larry filed a lawsuit (RE-00-096) in 2000. In 2002, the brothers agreed Leonel would convey a six-acre parcel to Larry, and the suit was dismissed. That agreement was never realized, allegedly because Leonel attempted to convey land that was unsuitable for building. In 2004, after this suit was filed, the brothers agreed Larry would surrender all claims to the property in exchange for $35,000. However, Leonel never paid Larry the money.

On April 12, 2004, Larry filed a complaint, seeking a declaratory judgment concerning each brother's interest in the Berry Road property (Count I). Larry also requested specific performance of the 2002 settlement agreement to convey six acres to Larry. (Count II).

On May 19, 2004, Leonel filed his own complaint, also asking this Court to determine the brothers' respective interests in the Berry Road property and to quiet

2

title. (Count I). Leonel also claimed title to the entire property by adverse possession. (Count II). Finally, Leonel brought a claim of malicious prosecution in the matter of the suit Larry filed in 2000. (Count III). The two cases were consolidated on June 28, 2004.

On June 22, 2004, Larry requested a preliminary injunction barring Leonel from removing sand and gravel from the Berry Road property. His request was granted on January 13, 2005. On January 11, 2005, Larry filed a Motion for Summary Judgment on his Counts I and II. On February 4, 2005, Leonel filed a Motion to Dismiss Larry's Counts I and II, which this Court treats as a Motion for Summary Judgment in Leonel's favor, pursuant to M.R. Civ. P. 12(b).

## DISCUSSION

A summary judgment is warranted when "the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that party is entitled to a judgment as a matter of law." *Darling's v. Ford Motor Co.*, 2003 ME 21, ¶ 4, 817 A.2d 877 (citing M.R. Civ. P. 56(c), (h). In a motion to dismiss, when the parties present and the court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in rule 56." M.R. Civ. P. 12(b). Here, the record before the Court includes opposing statements of material fact, affidavits, documents, and deeds from both sides.

### I. Deed interpretation. (Count I)

Larry argues that the granting clause of the 1945 deed should prevail under a traditional rule of deed construction that holds language in the granting clause takes precedence over any contradictory language in the habendum clause. Larry also relies on Maine case law holding that a grantor cannot destroy a grant made in a deed by other language within the same deed. Larry argues Alice's will conveying all her

3

property interests to him, shows that a life estate was not intended by the parties to the 1945 deed.

Leonel argues that the express language in the habendum clause of the 1945 deed should prevail because it reflects the intent of the Grantor to convey a life estate to Alice and Albert, with a remainder to Leonel. That understanding, Leonel argues, is reflected in a reference to a life estate in the easement portion of Alice's 1965 deed, conveying a portion of the Berry Road estate to Leonel.

When interpreting a deed, the Court first looks for "the controlling intent of the parties on the face of the deed." *Snyder v. Haagen,* 679 A.2d 510, 513 (Me. 1996). The scope of property interest conveyed by deed "is determined solely from the language of the deed if that language is unambiguous." *Thompson v. Pendleton,* 1997 ME 127, ¶ 12, 697 A.2d 56, 59 (citation omitted). "The classic definition of an ambiguity is language that is 'reasonably susceptible of different interpretations.'" *Thompson v. Rothman,* 2002 ME 39, ¶ 9, 791 A.2d 921; 924 (citation omitted). If the language of the deed is ambiguous and the intent of the parties is in doubt the court may examine the deed in light of extrinsic circumstances surrounding its execution. *Holden v. Morgan,* 516 A.2d 955, 956 (Me. 1986).

However, the Law Court has held that the general rule favoring the intent of the parties "is not of universal application... [Documents] of title especially are guarded by rules of law to secure their certainty, precision and permanency. If, in the effort to ascertain the real intent of the parties, one of these rules is encountered, it must control ...." *Page v. Nissen,* 254 A.2d 592, 595 (Me. 1969). One such common law rule of deed construction requires "that a grantor cannot destroy his own grant, however much he may modify it or load it with conditions . . . having once granted an estate in his deed, no subsequent clause, even in the same deed can operate to nullify it." *Whitney v.*

4

*Woodville*, 575 A.2d 313, 315 (Me. 1990). (citation omitted). *See also Wentworth v. Sebra*, 2003 ME 97, ¶ 21, 829 A.2d 520, 526 ("the *habendum* cannot defeat or destroy an estate granted in the premises; so far as the former is repugnant to the latter, it is inoperative and void"). The Law Court noted "that this rule has [n]ever been disregarded or even seriously questioned by courts." *Page v. Nissen*, 254 A.2d 592, 595 (Me. 1969). While some jurisdictions have renounced this rule in favor of examining the deed as a whole for the intent of the grantor, others reserve the rule for application to deeds with inconsistencies that cannot be harmonized. 14 POWELL ON PROPERTY § 81A.07(1)(A)(2000).

Here, the 1945 deed contains inconsistencies that cannot be harmonized. The granting clause of the Berry Road deed conveys one type of estate, a fee simple estate, to Alice, Albert and Leonel. With this estate, Alice, Albert and Leonel share a simultaneous, concurrent ownership of the property as tenants in common. 33 M.R.S.A. § 159 (2004). Each can dispose of their interest as they please, and pass on their interest at death. *Id.* The habendum clause of the same deed creates a different type of estate, namely a life estate in Alice and Albert, with a vested future interest (an indefeasibly vested remainder) in Leonel, in fee simple. *Webber v. Jones*, 94 Me. 429, 47 A. 903 (1900). This clause creates ownership interests in Alice and Albert that are divided in time from Leonel's interest, which vests only upon both their deaths. 33 M.R.S.A. § 158 (2004). Neither the granting clause nor the habendum clause is ambiguous. Thus, the two clauses are expressly inconsistent, and both cannot be reconciled.

If Larry is correct that a Grantor cannot be allowed to destroy the fee simple estate of the granting clause in the habendum clause, the 1945 deed created a fee simple estate in Albert, Alice and Leonel. Such conveyances of land "to 2 or more persons create estates in common, unless otherwise expressed." 33 M.R.S.A. § 159. Albert, Alice

5

and Leonel are each entitled to possession of the whole property subject to the rights of other tenants, and each has the right to make a testamentary transfer of his or her interest. When Albert or Alice, as tenants in common, died intestate, his or her interest passed under the applicable statutes of descent. As their son, Larry is now entitled to some of Alice and Albert's interest in the Berry Road property under the laws of intestate succession. The law of adverse possession would be inapplicable to Leonel's use and possession of the property under this scenario, because Leonel was until 1996 a tenant in common with his mother and his possession of the property could not be hostile to Larry's interests until her death in 1996. *See* 16-91 POWELL ON PROPERTY § 91.05 (possession by one tenant in common is presumed to be possession by all unless there is an ouster); *Musson v. Godley*, 1999 ME 193, ¶ 4, 742 A.2d 479, 480 (co-tenant who had sole possession of property for decades does not acquire title by adverse possession without ouster); *Emerson v. Maine Rural Missions Ass'n*, 560 A.2d 1, 3 (Me. 1989)("[I]n order to be adverse, the nature of the overt act must leave no question as to the intention to oust the owner from possession and ownership"). *Id.* The extent of Larry's interest in the Berry Road property under the laws of intestate succession would be determined in a partition action. 14 M.R.S.A. § 6501 et seq.

If Leonel is correct that the habendum clause prevails because it reflects the intent of the parties, he is sole owner of the Berry Road property in fee simple. Under this scenario, Leonel received a life estate from Alice for about half the property by deed in 1965. (Alice could not convey an estate greater than the life estate she held. *See, e.g., Hooper v. Leavitt*, 109 Me. 70, 82 A. 547 (1912)). Leonel's interest in that parcel then vested in 1996, when Alice, the "measuring life" of his life estate, died. His interest in the remaining half of the property also vested in 1996 when Alice died, terminating the

life estates of the parents. No interest in the Berry Road property was ever available to pass from either parent's life estate to Larry by intestate succession.

Contrary to Leonel's arguments, the "intent of the parties" to create a life estate in Albert and Alice is not easily determined, even when extrinsic evidence is admitted. All the original adult grantor and grantees are deceased. (Leonel was an infant in 1945). Language in the easement portion of the 1965 deed from Alice to Leonel, suggests that Alice understood herself to have a life tenancy. Alice's payment of property taxes up until her death, if true, further supports that understanding. However, the granting clause of that same 1965 deed "unto said Lionel (sic) Belanger his heirs and assigns forever" contradicts the easement language and indicates Alice intended to convey a fee simple, an estate she would not have to convey as a life tenant.

The language of the 1945 habendum clause may be viewed in light of the purpose of such clauses before passage of Maine's Short Form Deeds Act[2] as "a convenient place in which to insert words of inheritance, as well as words of limitation which would describe the estate conveyed." 14 POWELL ON PROPERTY § 81A.04(c)(iii)(d). However, under common law rules of 1945, any habendum clause that cut back or contradicted the estate in the granting clause was "repugnant and of no effect." *Id.*

The Court concludes that the clauses in the deed cannot be harmonized, nor the intent of the parties clearly determined; therefore, resort to more formal rules of deed interpretation is appropriate under Maine law. Likewise, the Court finds that the inconclusive "intent of the parties" must give way to this controlling rule in documents of title. *Page v. Nissen*, 254 A.2d at 595.

The Law Court noted in 1990, "that a grantor cannot destroy his own grant, however much he may modify it or load it with conditions . . . having once granted an

---

[2]     33 M.R.S.A. § 772 (1999).

7

estate in his deed, no subsequent clause, even in the same deed can operate to nullify it." *Whitney v. Woodville*, 575 A.2d 313, 315 (Me. 1990). This rule of deed construction was, according to the Law Court, "as ancient, general, and rigorous as any other." *Id.* In 2003, the Law Court stated that "the *habendum* cannot defeat or destroy an estate granted in the premises; so far as the former is repugnant to the latter, it is inoperative and void." *Wentworth v. Sebra*, 2003 ME 97, ¶ 14, 829 A.2d 520, 524.

Under this rule, the 1945 deed conveyed a fee simple estate to Albert, Alice and Leonel Belanger as tenants in common that cannot be destroyed by the contradictory language in the deed's habendum clause. This means that Albert's one-third undivided interest passed to Alice, Leonel and Larry in 1952, under the 1952 rules of intestate succession. Alice conveyed about 25 acres in fee simple to Leonel in 1965, with an easement granted for Alice's lifetime. Alice's one-third undivided interest passed to Leonel and Larry in 1996, under the 1996 rules of intestate succession.

## II. Specific performance (Count II).

Larry argues there is no disputed issue of fact concerning a 2002 settlement agreement between Larry and Leonel, in which Leonel promised to convey six acres of land to Larry in exchange for the dismissal of a suit, RE-00-096 commenced by Larry in this Court. Larry argues Leonel breached that agreement by failing to convey land suitable for building purposes. Larry now seeks specific performance of what he says are the terms of the parties' settlement agreement.

Parties may enter into a binding settlement agreement that includes, in its terms, the dismissal of pending litigation. *Comm'r of Human Servs. v. Waldoboro Water Co.*, 1999 ME 36, ¶ 3, 724 A.2d 622, 623. Settlement agreements may be found to be enforceable contracts subject to a judgment for specific performance. *A.L. Brown Constr. Co. v..*

8

*McGuire*, 495 A.2d 794, 798 (Me. 1985). The parties' mutual promises to release each other and relinquish claims provide the consideration for such contracts. *Id.* at 797.

Here, the undisputed record provides evidence, in a letter signed by both parties' attorneys, of an agreement between the brothers in 2002 to convey a parcel of the Berry Road property to Larry and to drop pending litigation. However, factual disputes remain concerning what portion of the property was to be conveyed and which party breached the agreement.

Because there is a factual dispute concerning the terms and breach of the 2002 settlement agreement that is material to any claim for specific performance, summary judgment cannot be granted for either side on Count II.

This Court Grants summary judgment for Larry Belanger on Count I, finding that the habendum clause of the 1945 deed is invalid as repugnant to the granting clause, and finding Larry Belanger has a cognizable interest in the property at Berry Road under the laws of intestate succession.

The Court Denies summary judgment for either party on Count II, for specific performance.

The clerk may incorporate this order in the docket by reference.

Dated:       May 25, 2005

G. Arthur Brennan
Justice, Superior Court

Stephen D. Bither, Esq. - Larry Belanger
James L. Audiffred, Esq. - Leonel Belanger

9